**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TENESHA ADAMS, | : | Case No. 1:16-cv-520 |
| *Individually and on behalf of those* | : | |
| *Similarly situated,* | : | Judge Timothy S. Black |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| ANTONELLI COLLEGE, *et al.*, | : | |
| Defendants. | : | |

## ORDER GRANTING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT (Doc. 36) AND
## TERMINATING THIS CASE IN THIS COURT

This civil case is before the Court on Defendants' motion for summary judgment

on the claims of Plaintiff Tenesha Adams (Doc. 36) and the Counterclaim filed by

Antonelli (Doc. 34) as well as the parties' responsive memoranda (Docs. 40, 41).[1]

# I. BACKGROUND

## A. Introduction.

Ms. Adams commenced this lawsuit, which alleges that Defendants engaged in

deceptive and misleading marketing and advertising practices. Ms. Adams is a former

student in Antonelli's Practical Nursing Program ("PNP"). Ms. Adams's claims, which

are asserted on behalf of herself and a putative class, are premised on her contention that

Defendants misrepresented facts about the PNP, including its quality and approval from

the Ohio Board of Nursing ("OBN") and failed to provide adequate instruction.

---

[1] "Defendants" are Technology Training Systems, Inc. d/b/a Antonelli College ("Antonelli"), Mary Ann Davis, and Marre Barnette.

On these bases, the Complaint asserts claims for violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), breach of contract, negligent misrepresentation, and promissory estoppel.

In response, Antonelli filed a Counterclaim which alleges that Ms. Adams is liable for unpaid tuition and costs and asserts claims for breach of contract and unjust enrichment.

**B. The PNP.**

In September, 2013, Antonelli opened the PNP. (Doc. 36-1 at ¶ 23; Doc. 40-1 at ¶ 23). The PNP had previously been granted "conditional approval" by the OBN on November 15, 2012. (Doc. 36-1 at ¶ 24; Doc. 40-1 at ¶ 24).

In November, 2014, the OBN entered into a consent agreement ("Consent Agreement") with Antonelli that extended the conditional approval status of the PNP until November, 2015. (Doc. 36-1 at ¶ 25; Doc. 40-1 at ¶ 25). During these "conditional approval" phases, Antonelli was allowed to enroll and graduate students and its graduates were eligible to sit for the NCLEX-PN exam and to become licensed practical nurses in the State of Ohio. (Doc. 36-1 at ¶ 26; Doc. 40-1 at ¶ 26).

**C. Ms. Adams enrolls in the PNP.**

Ms. Adams enrolled in the PNP in or around November, 2014. (Doc. 36-1 at ¶ 1; Doc. 40-1 at ¶ 1). Ms. Adams signed certain documents and disclosures pertaining to her enrollment that are of consequence to this litigation. (Doc. 36-1 at ¶ 2; Doc. 40-1 at ¶ 2).

Ms. Adams executed an enrollment agreement ("Enrollment Agreement") in which she agreed to pay tuition and fees in exchange for educational services provided by Antonelli. (Doc. 36-1 at ¶ 10; Doc. 40-1 at ¶ 10; Doc. 36-3).

Ms. Adams executed a Policies and Procedures disclosure whereby she certified that she had received a copy of the current Antonelli Catalog ("College Catalog"). (Doc. 36-1 at ¶ 28; Doc. 40-1 at ¶ 28; Doc. 36-13). The College Catalog expressly stated that the PNP was "conditionally approved" by the OBN:

> Antonelli College Practical Nursing Program was granted Conditional Approval by the Ohio Board of Nursing. Conditional Approval is the initial approval status granted to a new nursing education program that meets and maintains the requirements of Chapter 4723-5, Ohio Administrative Code, and is necessary for the implementation of the program. Graduates of the Practical Nursing Program are eligible to sit for the NCLEX-PN and apply for licensure as a Licensed Practical Nurse (LPN) in the State of Ohio.

(Doc. 36-1 at ¶ 29; Doc. 36-12 at 6).[2]

Ms. Adams signed a Financial Aid Application in which she certified to Antonelli that she would "be responsible for a balance due in cash that is not paid by federal, state or agency assistance." (Doc. 36-1 at ¶ 11; Doc. 40-1 at ¶ 11; Doc. 36-8 at 2).

To pay for her tuition, Ms. Adams received Federal Student Aid, including Pell Grants, Subsidized Loans and Unsubsidized Loans, as well as cash payments. (Doc. 36-1 at ¶ 12; Doc. 40-1 at ¶ 12).

---

[2] Ms. Adams denies Paragraph 29 of Defendants' statement of proposed undisputed facts because she claims she never received a copy of the College Catalog (despite certifying that she had). Ms. Adams does not cite to any affirmative evidence to rebut Defendants' assertion that the quoted language regarding conditional approval is in the College Catalog that Ms. Adams certified she received. (*See* Doc. 36-12 at 6).

According to her Student Statement, Ms. Adams has a balance due for unpaid tuition that was not covered by grants, loans, or cash payments to Antonelli of $1,832.00. (Doc. 36-1 at ¶ 14; Doc. 40-1 at ¶ 14; Doc. 36-9).

Ms. Adams also participated in the Antonelli College Loan Program ("ACLP"). (Doc. 36-1 at ¶ 13).[3] Under the ACLP, Ms. Adams entered into two Master Promissory Notes ("MPNs") with Antonelli on November 7, 2014, and August 3, 2015, respectively. (Doc. 36-1 at ¶ 15; Doc. 40-1 at ¶ 15; Doc. 36-10). Under the MPNs, Ms. Adams agreed to repay the loan amounts disbursed thereunder, plus interest and other charges and fees due under the MPNs. (Doc. 36-1 at ¶ 16; Doc. 40-1 at ¶ 16; Doc. 36-10). In total, $718 was disbursed under the MPNs. (Doc. 36-1 at ¶ 17; Doc. 40-1 at ¶ 17).

Plaintiff agreed to repay the principal and interest on the ACLP loans to Antonelli beginning 180 days after her separation from the college. (Doc. 36-1 at ¶ 18; Doc. 40-1 at ¶ 18; Doc. 36-10). Ms. Adams' last day of attendance at Antonelli was October 22, 2015. (Doc.36-1 at ¶ 19; Doc. 40-1 at ¶ 19). Accordingly, her repayments came due on April 19, 2016. (Doc. 36 at ¶ 20; Doc. 40-1 at ¶ 20). Under the terms of the MPNs, Antonelli, at its option, can declare loans in default and demand immediate payment of the entire balance, including principal, interest, and collection costs if scheduled payments are not made when due. (Doc. 36-1 at ¶ 21; Doc. 40-1 at ¶ 21; Doc. 36-10). In total, Ms. Adams owes Antonelli $718 plus interest for her unpaid ACLP balance and

---

[3] Ms. Adams did not respond to Paragraph 13 of Defendants' statement of proposed undisputed facts.

$1,832 for unpaid tuition. (Doc. 36-1 at ¶ 22).[4]

**D. Ms. Adams departs the PNP after failing a course.**

Ms. Adams began classes at the PNP in January, 2015. (Doc. 36-1 at ¶ 3; Doc. 40-1 at ¶ 3).

Ms. Adams's last day in the PNP was October 22, 2015. (Doc. 36-4). On October 23, 2015, Ms. Adams was informed that she failed a course (Nursing II). (Adams Dep. at 36:13-20).[5] When Defendants informed Ms. Adams she would have to re-take the course, she chose not to re-enroll. (*Id.* at 40:20-42:17).

Following her departure from the PNP, Ms. Barnette filed a complaint with the OBN. (Doc. 36-1 at ¶ 5; Doc. 36-5). Antonelli was given the opportunity to respond and provide supporting documentation. (Doc. 36-1 at ¶ 6; Doc. 40-1 at ¶ 6; Doc. 36-6). On January 15, 2016, the OBN advised Antonelli that, based on its review of the materials submitted, "the Rules of 4723-5, OAC, were met." (Doc. 36-1 at ¶ 7; Doc. 40-1 at ¶ 7; Doc. 36-7).[6]

In March, 2016, Ms. Adams filed a complaint with the Ohio Attorney General's Office. (Doc. 36-1 at ¶ 8; Doc. 40-1 at ¶ 8). Besides an initial communication, Ms.

---

[4] Ms. Adams denies paragraph 22 of Defendants' statement of proposed undisputed facts because she alleges her claims in this lawsuit offset any monies she owes Antonelli, however, she does not cite to any evidence to rebut Defendants assertion of the amount owed for unpaid tuition or the balance of Ms. Adams's ACLP.

[5] Ms. Adams's deposition is filed at Doc. 36-2.

[6] "4723-5" is the Chapter of the Ohio Administrative Code applicable to "Nursing Education Programs."

Adams has never heard anything further from the Attorney General's Office.  (Doc. 36-1 at ¶ 9; Doc. 40-1 at ¶ 9).

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## III.  ANALYSIS

### A.  Ms. Adams does not have standing to assert the ODTA claim.

Count One of the Complaint alleges that Defendants violated the ODTPA by making deceptive, false and misleading statements concerning the PNP.  (Doc. 2 at ¶¶ 52-60).  Count One alleges that Defendants misrepresented the PNP and failed to advise enrollees that it had entered into the Consent Agreement and that the State of Ohio could revoke its approval for the PNP if certain deficiencies were not corrected.  (*Id.*)

Defendants argue Ms. Adams does not have standing to pursue this claim because she is an individual consumer and has not suffered a commercial injury. (Doc. 40 at 8-10). The Court agrees.

Under the ODTPA, a person engages in an unlawful "deceptive trade practice" when, in the course of the person's business, vocation, or occupation, he or she, *inter alia*:

> (7)     represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

> (9)     represents that goods or services are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if they are of another.

Ohio Rev. Code § 4165.02(A)(7) and (9).

The ODTPA confers standing on a "person who is likely to be damaged by a person who commits a deceptive trade practice" or a "person who is injured by a person who commits a deceptive trade practice." *Id.* at § 4165.03(A)(1). The statute defines a "person" as an "individual, corporation, government . . . or any other legal or commercial entity." *Id.* at § 4165.01(D).

The majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA. *See Terlesky v. Fifth Dimension, Inc.*, Case No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236, at ** 5-7 (S.D. Ohio Nov. 17, 2015) (Dlott, J.) ("a 'consumer' does not have standing to commence a civil action under the ODTPA"); *Citimortgage, Inc. v. Crawford*, 934 F. Supp. 2d 942, 950 (S.D. Ohio

2013) (Black, J.) ("a consumer does not have standing to [s]ue under the DTPA");

*Phillips v. Phillip Morris Cos.*, 290 F.R.D. 476, 484 (N.D. Ohio 2013) (Lioi, J.)

("consumers lack standing to bring claims under the DTPA"); *Lester v. Wow Car Co.*,

Case No. 2:11-cv-850, 2014 U.S. Dist. LEXIS 77567, at ** 30-35 (S.D. Ohio June 6,

2014) (Sargus, J.); *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 697-99

(S.D. Ohio 2012) (Smith, J.); *In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes*

*Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 873-75 (S.D. Ohio 2012) (Frost, J.); *Robins v.*

*Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 649-650 (N.D. Ohio 2012) (Polster,

J.).

A minority of courts have held individual consumers <u>do</u> have standing based on

the statute's plain language that it applies to "individuals." *See Schumacher v. State Auto*

*Mut. Ins. Co.*, 47 F. Supp. 3d 618, 630-33 (S.D. Ohio 2014) (Spiegel, J.); *Bower v. IBM*,

495 F. Supp. 2d 837, 842-44 (S.D. Ohio 2007) (Rice, J.).[7]

Courts in the majority have asserted two primary reasons in support of their

conclusion that individual consumers lack standing under the ODTPA. First, most courts

have reasoned that the ODTPA is analogous to Section 43(a) of the Lanham Act, which

similarly confers standing on "any person who believes that he or she is likely to be

damaged" by conduct prohibited under the Act. Despite this language, federal courts

have consistently held individual consumers lack standing under Section 43(a) because

---

[7] The Supreme Court of Ohio has not resolved this conflict. In 2010, Judge O'Malley in the Northern District of Ohio determined that the issue of whether an individual has standing under the ODTPA should be certified to the Supreme Court of Ohio. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 752 (N.D. Ohio 2010). However, the issue was never certified as the plaintiff in that case dismissed the ODTPA claim. *Robins*, 838 F. Supp. 2d at 649, n. 3.

they are not within the class of persons that the Lanham Act was designed to protect, *i.e.*, persons engaged in commerce. *See Robins*, 838 F. Supp. 2d at 650 (explaining consumers lack standing under the ODTPA because it is analogous to the Lanham Act, which only protects "persons engaged in commerce, not individual consumers, against unfair competition") (quotation omitted); *see also In re Porsche Cars*, 880 F. Supp. 2d at 873-75 ("the ODTPA is substantially similar to Section 43(a) of the Lanham Act and the Lanham Act protects the interests of a purely commercial class that does not include individual consumers") (citation omitted); *Terlesky*, 2015 U.S. Dist. LEXIS 155236, at * 6.

These courts find support for this reasoning in *Dawson v. Blockbuster, Inc.*, a decision from the Ohio Eighth District Court of Appeals which expressly holds consumers do not have standing under the ODTPA because it is substantially similar to the Lanham Act, which protects the interests of a purely commercial class. 8th Dist. Cuyahoga No. 86451, 2006-Ohio-1240, ¶¶ 23-25. The state appellate court reasoned in *Dawson* that claims under the ODTPA are to be analyzed like claims arising under federal statutes concerning unfair competition. *Id.* at ¶ 23. More recently, the Ohio Fourth District Court of Appeals agreed with *Dawson* and held that individuals do not have standing under the ODTPA. *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, ¶¶ 29-33 (4th Dist.).

The Sixth Circuit Court of Appeals expressly approved this analysis in affirming a district court's dismissal of a consumer's ODTPA claim:

> The district court dismissed [plaintiff's] ODTPA claim based
> on its determination that [plaintiff] and the other putative
> class members, as consumers, lacked standing to bring claims
> under the ODTPA.   As the Ohio Supreme Court has not
> considered the issue, we look for guidance to the Ohio Court
> of Appeals. . . . In *Dawson v. Blockbuster, Inc.*, 2006 Ohio
> 1240, 2006 WL 1061769, at *3-4 (Ohio Ct. App. 2006), the
> court held that consumers do not have standing to raise
> ODTPA claims because (1) the ODTPA and the federal
> Lanham Act are "substantially similar," and (2) all federal
> courts of appeal to have considered the issue have held that
> consumers do not have standing under the Lanham Act.   The
> Ohio Supreme Court declined to accept the appeal for review
> in *Dawson v. Blockbuster, Inc.*, 110 Ohio St. 3d 1442, 2006
> Ohio 3862, 852 N.E.2d 190 (Ohio 2006).
>
> Although [Plaintiff] asserts various reasons why we should
> distinguish the ODTPA from the Lanham Act, he has failed to
> make the requisite strong showing that the Ohio Supreme
> Court would decide this issue differently.   We therefore
> affirm the district court's decision that [plaintiff] does not
> have standing to raise an ODTPA claim as a consumer.

*Holbrook v. Louisiana-Pacific Corp.*, 533 Fed. App'x 493, 497-98 (6th Cir. 2013).

Second, courts have explained that conferring standing on consumers under the

ODTPA would render the Ohio Consumer Sales Practices Act ("OCSPA") superfluous,

because both statutes regulate the same type of conduct, but the OCSPA expressly applies

to consumer transactions.  *See Phillips*, 290 F.R.D. at 484 (explaining that the state

legislature's subsequent passage of the OCSPA evidences an intent that the ODTPA not

apply to consumers); *Gascho*, 863 F. Supp. 2d at 699 ("the DTPA addresses commercial

injury, and not consumer injury (which is addressed by the CSPA)"); *Robins*, 838 F.

Supp. 2d at 650.[8]

The Court appreciates that there is a split of authority on the issue of whether, under Ohio law, individual consumers have standing to assert a claim under the ODTPA. However, the Court agrees with the majority of courts to consider the issue and holds that individual consumers do not have standing.

First, the Court finds the reasoning set forth in, *inter alia*, *Terlesky*, *In re Porsche Cars*, and *Robins* that the ODTPA is to be interpreted consistently with the analogous Lanham Act to be well-reasoned and persuasive.

Second, and importantly, the Sixth Circuit has expressly approved this analysis and reasoning. *Holbrook*, 533 Fed. App'x at 497-98.

Third, two Ohio state appellate courts have expressly held that the ODTPA, like the Lanham Act, does not apply to consumers. *Hamilton*, 2014-Ohio-1118, ¶¶ 29-33; *Dawson*, 2006-Ohio-1240, ¶¶ 23-25. This Court is not to disregard these decisions from Ohio's intermediate appellate courts unless it is convinced the Supreme Court of Ohio would decide the issue differently. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). The Court is not convinced

---

[8] The OCSPA proscribes suppliers from committing unfair or deceptive acts in connection with consumer transactions, including, *inter alia*, that the subject of a transaction has "sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have," or that the subject of a consumer transaction "is of a particular standard, quality, grade, style, prescription, or model, if it is not[.]" *See* Ohio Rev. Code § 1345.02(B)(2)-(3).

that the highest court of the state would decide otherwise. The Court agrees with Judge

Frost that the Supreme Court of Ohio is likely to agree with the position set forth in

*Dawson*. *See In re Porsche Cars*, 880 F. Supp. 2d at 875.

Fourth, and finally, the Court agrees that a contrary holding would render the

OCSPA superfluous. *See Hamilton*, 2014-Ohio-1118, ¶ 13 ("The proper remedy for

<u>consumers</u> seeking redress against unfair, deceptive, or unconscionable acts in the sale of

consumer goods or services is through the CSPA") (emphasis supplied); *Phillips*, 290

F.R.D. at 484; *Robins*, 838 F. Supp. 2d at 650.

Here, Ms. Adams, as an individual consumer, does not have standing to pursue an

ODTPA claim. *See Holbrook*, 533 Fed. App'x at 497-98; *Terlesky*, 2015 U.S. Dist.

LEXIS 155236, at ** 5-7; *Crawford*, 934 F. Supp. 2d at 950; *Phillips*, 290 F.R.D. at 484;

*In re Porsche Cars*, 880 F. Supp. 2d at 873-74; *Robins*, 838 F. Supp. 2d at 649-650.

Accordingly, Defendants' motion for summary judgment (Doc. 36) is **GRANTED**

on Count One of the Complaint.

### B.  Ms. Adams's breach of contract claim fails on the facts and the law.

Count Two of the Complaint asserts a claim for breach of contract. (Doc. 2 at

¶¶ 61-67). Specifically, Count Two alleges Defendants breached the terms of the Student

Handbook and the Antonelli Loan Agreement (the "Contracts").

The Complaint does not attach or describe any provision of the Antonelli Loan

Agreement. The Complaint identifies a few provisions of the Student Handbook.

Specifically, the Student Handbook's mission statement provides:

> Antonelli College's Practical Nursing Program is offered by
> the Department of Nursing. The program prepares
> knowledgeable nursing graduates by providing a caring,
> diverse, and student-centered learning environment that
> nurtures critical thinking and enriches holistic healthcare
> across the lifespan. All activities of the nursing program are
> guided by the college's mission, as reflected in the specific
> goals, purposes and philosophy of the nursing program.

(Doc. 2 at ¶ 19). The Student Handbook also states that the PNP "prepares students for

[the NCLEX-PN] required by the Ohio Board of Nursing for the licensure to practice as a

Licensed Practical Nurse." (*Id.* at ¶ 20).

The Complaint alleges Defendants breached the Contracts by "not properly

preparing [Ms. Adams] for taking the tests associated with obtaining [her] licensure as an

LPN" and by "making it impossible for [her] to obtain [her] degree[]" (Doc. 2 at ¶¶ 61-

67).

Defendants argue Ms. Adams's breach of contract claim is an impermissible

"educational malpractice" claim in disguise, and that the claim fails on the merits because

Ms. Adams voluntarily chose not to re-enroll in the PNP after failing a course. (Doc. 36

at 11-12). The Court agrees with Defendants.

First, Ms. Adams's breach of contract claim is an impermissible claim for

"educational malpractice." A claim that educational services provided were inadequate

constitutes a claim for educational malpractice. *Rockwood v. Shoen*, 145 F. Supp. 3d

718, 724 (S.D. Ohio 2015) (Frost, J.). Ohio does not recognize educational malpractice

claims for public policy reasons. *Id.*; *see also Hutchings v. Vanderbilt Univ.*, 55 Fed.

App'x 308, 310 (6th Cir. 2003) ("Courts are not inclined to review educational

malpractice claims or breach of contract claims based on inadequate educational services"); *Lawrence v. Lorain Community College*, 127 Ohio App. 3d 546, 549 (9th Dist. 1998) (plaintiff's claim that school breached a contract by "providing substandard education, guidance and supervision" failed because "Ohio does not recognize educational malpractice claims for public policy reasons").

Here, Ms. Adams confirmed in her deposition that the breach of contract alleged in her Complaint arises from her allegation that Antonelli did not provide the quality of education represented in the Student Handbook:

> Q. Can you tell me, why are you suing Antonelli?
>
> A. Antonelli did not—they misled me by telling me that they were going to give me the material and the tools needed to sit for the NCLEX. They lied to me. **They promised me quality education. That was not given to me.** They did not follow their syllabus. I just feel lied to.
>
> . . . .
>
> Q. Okay. Who told you a lie?
>
> A. I feel like all the representatives of the school told me a lie.
>
> Q. Specifically what lies?
>
> A. They told me that—they gave me—**they gave me a handbook, and in that handbook it has a statement in there on the expectations of their students and our expectations of them, what they were going to provide, and it was not done**. I went there—from the time I was there until IV therapy, IV therapy on, no, it was not done.
>
> Q. So what was promised to you as the level of quality and education in the handbook was not provided to you?
>
> A. It was not provided to me.

> Q. Is that a good way to summarize what you're telling me?

> A. Yes. It was not provided to me.

(Adams Dep. at 97:21-98:3; 98:10-99:3) (emphasis supplied). Ms. Adams's claim that Defendants breached the Contracts by not providing an adequate education is an impermissible educational malpractice claim. *Rockwood*, 145 F. Supp. 3d at 724.

Second, and additionally, Ms. Adams's claim that Defendants breached the terms of one of the Contracts by making it "impossible" for her to obtain her degree fails on the facts. Ms. Adams admits that Defendants told her she could re-take a course she failed in October, 2015, but she voluntarily decided not to continue her education in the PNP. (Adams Dep. at 40:20-42:17).

Ms. Adams argues that Antonelli breached the Student Handbook by not providing necessary supplies and books. (Doc. 40 at 13). This argument is not availing. The Complaint does not allege that Defendants breached a contractual obligation by failing to provide books or supplies.[9] The law is clear that a party may not expand a claim in response to a motion for summary judgment in order to create an issue of fact. *See Pharos Capital Partners, L.P. v. Touche, L.L.P.*, 905 F. Supp. 2d 814, 831 (S.D. Ohio 2012) (Graham, J.) ("The Sixth Circuit has made clear that a party may not 'expand its

---

[9] While a plaintiff is not required to set out every fact in support of its claim in the complaint, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 U.S. App. LEXIS 26601, at * 14 (6th Cir. Oct. 19, 1999). The Complaint does not identify any contractual term that was breached by Defendants alleged failure to provide books and supplies.

claims to assert new theories' in response to a motion for summary judgment") (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).

The breaches alleged in the Complaint—that Defendants did not properly prepare Ms. Adams for the NCLEX-PN and prevented her from obtaining a degree—fail on the law and the undisputed facts. Ms. Adams's argument at the summary judgment stage that Defendants <u>also</u> breached a contract by failing to provide books and supplies was not pled in the Complaint and cannot be asserted now. *Pharos Capital Partners*, 905 F. Supp. 2d at 831.

Accordingly, Defendants' motion for summary judgment (Doc. 56) is **GRANTED** on Count Two, for breach of contract.

**C. Ms. Adams's negligent misrepresentation claim fails as a matter of law.**

Count Three of the Complaint asserts a claim of negligent misrepresentation. (Doc. 2 at ¶¶ 68-73). The Supreme Court of Ohio has defined the tort of "negligent misrepresentation" as:

> One who, in the course of his business, profession or employment or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835 (1989) (quotations omitted).

Ms. Adams asserts two "misrepresentations" in support of her negligent misrepresentation claim; neither can survive summary judgment. First, Ms. Adams

alleges Defendants misrepresented that the PNP was "approved" by the OBN when it was only "conditionally approved." (Doc. 2 at ¶ 71).

Defendants argue that this claim is barred by Ms. Adams's written acknowledgment that she received the College Catalog. (Doc. 36 at 12-13).

The Court agrees with Defendants. A claim cannot be sustained when a plaintiff seeks to contradict the plain language of a written contract or disclosure. *Irvin v. American General Financial, Inc.*, No. CR2004-0046, 2005 Ohio App. LEXIS 3271, at ** 10-11 (Ohio App. June 30, 2005) (affirming dismissal of fraud claims that were directly contradicted by signed written disclosures); *Williams v. CitiMortgage*, *Inc.*, No. 2:08-cv-368, 2011 U.S. Dist. LEXIS 35800, at ** 12-13 (S.D. Ohio Mar. 31, 2011) (Watson, J.).

Here, Ms. Adams admits she signed the Policies and Procedures disclosure, which states that she received a copy of the College Catalog. (Doc. 36-1 at ¶ 28; Doc. 40-1 at ¶ 28; Doc. 36-13). The College Catalog expressly states that the PNP was granted "Conditional Approval" by the OBN. (Doc. 36-12 at 6). Ms. Adams's certification that she received the College Catalog bars her negligent misrepresentation claim to the extent it is premised on Defendants' allegedly misrepresenting that Antonelli was "approved," as opposed to "conditionally approved," by the OBN. *Irvin*, 2005 Ohio App. LEXIS 3271, at ** 10-11; *Williams*, 2011 U.S. Dist. LEXIS 35800, at ** 12-13.

Second, Ms. Adams alleges Defendants failed to disclose "that [Antonelli] had entered into a Consent Agreement under which the PNP could lose approval from the OBN." (Doc. 2 at ¶ 71).

Defendants argue this "misrepresentation" is not actionable because Ms. Adams did not suffer any damage due to the Consent Agreement. (Doc. 36 at 13). The Court agrees with Defendants. There is no evidence that the PNP "lost" approval during Ms. Adams's tenure, no evidence that the PNP's approval status with the OBN affected Ms. Adams's ability to continue in the PNP, and no evidence that the PNP's approval status influenced Ms. Adams's decision not to continue her education after failing a class in October, 2015. Ms. Adams has not identified any affirmative evidence to even suggest that she was damaged by the Consent Agreement or Defendants' alleged concealment of the Consent Agreement.

Additionally, the Court notes Ms. Adams's allegation that Defendants <u>failed to disclose</u> the Consent Agreement cannot give rise to a claim for "negligent misrepresentation" as a matter of law. Under Ohio law, a claim for negligent misrepresentation arises when one <u>supplies</u> false information; it does not provide a cause of action based on an <u>omission</u>. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 149, 684 N.E.2d 1261 (9th Dist. 1996). In other words, "[n]egligent misrepresentation does not lie for omissions, there must be some affirmative false statement." *Id.*; *see also Meconi v. Verizon Wireless,* Case No. 3:05-cv-7276, 2006 U.S. Dist. LEXIS 79481, at * 13 (N.D. Ohio Oct. 17, 2006) ("Omissions by a defendant, standing alone, are not sufficient for a negligent misrepresentation claim").

Accordingly, Defendants' motion for summary judgment (Doc. 36) is **GRANTED** on Count Three of the Complaint, for negligent misrepresentation.

**D. Promissory Estoppel.**

Count Four of the Complaint asserts a claim for promissory estoppel. (Doc. 2 at ¶¶ 74-80). The elements of a promissory estoppel claim are "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Pappas v. Ippolito*, 177 Ohio App. 3d 625, 2008-Ohio-3976, ¶ 55, 895 N.E.2d 610.

Ms. Adams argues she relied on Defendants' "representations and promises" in enrolling in the PNP. (Doc. 2 at ¶ 77).

Defendants argue this claim is premised on alleged "promises" pertaining to the PNP's approval with the OBN, and accordingly, is barred by Ms. Adams's certification that she received the College Catalog. (Doc. 41 at 11-12).

The Court agrees with Defendants. The only "promise" identified by Ms. Adams is Defendants' alleged representation that the PNP had full approval, not conditional approval, from the OBN. (*See* Doc. 40 at 23, "Plaintiff was injured when Antonelli failed to disclose the PNP was only conditionally approved and Plaintiff relied on that promise to her detriment in enrolling in the PNP").

As explained in Section III(C), *supra*, Ms. Adams cannot advance a claim premised on Defendants' alleged misrepresentation of the PNP's approval status because Ms. Adams certified in writing that she received the College Catalog which expressly stated the PNP is "conditionally approved" by the OBN. *See Irvin*, 2005 Ohio App. LEXIS 3271, at ** 10-11; *Williams*, 2011 U.S. Dist. LEXIS 35800, at ** 12-13.

Accordingly, Defendants' motion for summary judgment (Doc. 36) is **GRANTED** on Count Four of the Complaint, for promissory estoppel.

**E. Antonelli is entitled to summary judgment on its Counterclaim.**

As part of Defendants' motion for summary judgment, Antonelli asks the Court to enter judgment as a matter of law on its Counterclaim for breach of contract. (Doc. 36 at 14-15).

The elements of a claim for breach of contract are (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure. *Telxon Corp. v. Smart Media of Del., Inc.*, 9th Dist. Summit Nos. 22098 & 22099, 2005-Ohio-4931, ¶ 53 (citation omitted).

The Court finds that Antonelli has established each element of its claim for breach of contract and is entitled to judgment as a matter of law.

First, it is undisputed that Ms. Adams is contractually obligated to pay Antonelli (1) for tuition that was not covered by grants, loans, or cash payments; and (2) for loan amounts, plus interest, advanced under the MPNs. (*See* Doc. 36-3; Doc. 36-8 at 2; 36-10).

Second, it is undisputed that Antonelli provided the courses for which Ms. Adams paid.

Third, it is undisputed that Ms. Adams has not fulfilled her contractual obligations to Antonelli by failing to pay her ACLP balance and tuition that was not covered by

grants, loans, or cash payments. (Doc. 36-1 at ¶¶ 14, 17, 21; Doc. 40-1 at ¶¶ 14, 17; Doc. 36-9).

Fourth, Ms. Adams's breach has damaged Antonelli in the amount of Ms. Adams's unpaid tuition ($1,832) and ACLP balance ($718 plus interest). (*Id.*)

Ms. Adams argues that Antonelli cannot maintain a claim for breach of contract because Antonelli breached, and did not perform, its contractual obligations. (Doc. 40 at 25). Ms. Adams argues that any amount she owes to Antonelli should be offset by her damages in this case. These arguments are not availing; the Court has already determined that Defendants are entitled to summary judgment on all of Ms. Adams's claims, including her claim for breach of contract.

Accordingly, Defendants' motion for summary judgment (Doc. 36) is **GRANTED** on Antonelli's Counterclaim for breach of contract (Doc. 34 at ¶¶ 19-23).[10]

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment (Doc. 36) is:

1. **GRANTED** on all claims in Plaintiff's Complaint (Doc. 2); and

2. **GRANTED** on Defendant Antonelli's Counterclaim for breach of contract (Doc. 34 at ¶¶ 19-23);

---

[10] Antonelli also asserts a Counterclaim for unjust enrichment which is premised on the same facts as its claim for breach of contract, *i.e.*, that Ms. Adams breached her contractual obligations to pay Antonelli tuition and amounts disbursed under the MPNs. (Doc. 34 at ¶¶ 24-27). In Ohio, claims for unjust enrichment cannot be brought "where the subject matter of the claim[] is governed by a contract between the parties." *Davis & Tatera, Inc. v. Gray-Syracuse*, 796 F. Supp. 1078, 1086 (S.D. Ohio 1992) (Kinneary, J.). Having found that Antonelli is entitled to summary judgment on its breach of contract claim, the Court will dismiss the unjust enrichment claim—premised on the same subject—as moot.

3. Defendant Antonelli's Counterclaim for unjust enrichment (Doc. 34 at ¶¶ 24-27) is **DISMISSED** as **MOOT**; and

4. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: _____3/30/18_____

Timothy S. Black
United States District Judge